**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**McGILL TECHNOLOGY LIMITED,**

     **Plaintiff,**

**v.**

**SWAN'S SALES ENTERPRISES, INC.,**

     **Defendant.**

_____/

**Case No. 03-71395**

**Honorable Denise Page Hood**

<u>**ORDER AND OPINION REGARDING CLAIM CONSTRUCTION**</u>
**and**
<u>**NOTICE OF STATUS CONFERENCE**</u>

**I.    BACKGROUND**

On April 8, 2003, Plaintiff Mcgill Technology, Limited filed the instant one-count patent

infringement action against Defendants Schwan's Sales Enterprises, Inc. and Schwan's Technology

Group, Inc.  On July 11, 2003, Defendants filed a one-count Counterclaim seeking a declaratory

judgment of non-infringement and invalidity.

Plaintiff is the owner of the three patents at issue: 1) U.S. Patent No. 5,620,115 ("the '115

Patent"); 2) U.S. Patent No. 6,105,820 ("the '820 Patent"); and, 3) U.S. Patent No. 6,182,862 B1

("the '862 Patent").  Shane R. McGill is the named inventor on all of these patents.  These three

patents are from a parent application, U.S. Patent Application S/N 07/399,536, filed August 10,

1989, now known as U.S. Patent No. 5,069,364 ("the '364 Patent").  The claims set forth in the '364

Patent are not at issue.  Plaintiff has asserted two claims[1] of the '115 Patent (claims 1 and 10),

_____

[1] Defendants assert that Plaintiff has three claims in the '115 Patent, totaling 27 claims.
In any event, it appears the parties agree that there are 16 terms at issue.

fourteen claims of the '820 Patent (claims 1, 2, 6, 8-11, 15-17, 21, 23, 24), and ten claims of the '862 Patent (claims 1-6 and 8-11). Of these 26 claims (27 per Defendants), 16 terms are at issue. (See Ex. A to Defendants' Br.; Ex. F to Plaintiffs' Resp. Br.)

The patents at issue involve frozen confection dispensers, specifically, machines for dispensing pre-packed frozen confections, or ice cream. Plaintiff claims that prior to Mr. McGill's patents, the most widely used type of dispensing machine was the soft serve frozen custard machine. There were numerous limitations of the machine, including problems with cleaning the machine and the inability to dispense the ice cream in a near solid state.

In 1987, Defendant McGill invented a new concept for dispensing ice cream which allowed packaging of ice cream in an almost solid state. The concept included pre-packing ice cream in a container. The container is inserted into a dispensing machine having a refrigerated compartment surrounding the container. The ice cream is dispensed from the machine by squeezing it from the container. The ice cream in the container is compressed by a dispensing means within the machine as the ice cream is squeezed from the container  Plaintiff claims Defendants' Arctic Express Ice Cream Dispenser infringes on its patents.

This matter is before the Court on a hearing to determine the meaning of the terms at issue. The parties have submitted their briefs and responses thereto.

## II.    CLAIM CONSTRUCTION

### A.    Standard of Review

Claim construction is an issue of law. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 388-90 (1996). The interpretation of patent claims is more a legal than a factual determination and is to be made by judges rather than juries. *Id.* It is the claims that measure the invention. *SRI Int'l*

*Inc. v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1121 n. 14 (Fed. Cir. 1985). The patentee is required to define precisely what his invention is and it would be unjust to the public to construe it in a manner different from the plain import of its terms. *White v. Dunbar,* 119 U.S. 47, 52 (1886). The courts begin the claim construction analysis with the words of the claim. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996). Absent an express intent to impart a novel meaning, "terms in a claim are to be given their ordinary and accustomed meaning" attributed to them by those of ordinary skill in the art *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1249 (Fed. Cir. 1998); *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1325 (Fed. Cir. 2002).

In interpreting claims, a court "should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics,* 90 F.3d at 1582. While words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is stated in the patent specification or file history. *Id.* at 1576. If the intrinsic evidence alone will resolve any ambiguity on a disputed claim term, then it is improper to rely on extrinsic evidence. *Id.* at 1582.

Courts, however, should not import limitations from the specification into the claim language, which can be difficult to apply in practice. *See Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186-87 (Fed. Cir. 1998). To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so. *See Spectra-Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1533 (Fed. Cir.

3

1987).  To so teach, the specification usually provides an example of how to practice the invention in a particular case and the manner in which the patentee uses the term within the specification and claims usually will make the distinction apparent.  *See Snow v. Lake Shore & M.S. Ry. Co.,* 121 U.S. 617, 630 (1887).  If a patent describes only a single embodiment in the specification, the claims of the patent should not be construed as being limited to that embodiment because those persons of ordinary skill in the art rarely confine their definitions of terms to the exact representations depicted in the embodiments, unless the patentee clearly intended to limit the claim scope using words of manifest exclusion or restriction.  *See Teleflex,* 299 F.3d at 1327.

Extrinsic evidence may be relied on by the courts, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Id.* at 1583.  Dictionaries and treatises may provide the court a better understanding the underlying technology and the way in which one of skill in the art might use the claim terms.  *Id.* at 1584 n. 6.  However, if the definition contradicts any definition found in or ascertained by the intrinsic patent documents, courts should not rely on a dictionary definition.  *Id.* The use of a dictionary may extend patent protection beyond what should properly be afforded by the inventor's patent.  *See Smith v. Snow,* 294 U.S. 1, 14 (1935).  General dictionary definitions, while reflective of the ordinary meanings of words, do not always associate those meanings with context or reflect the customary usage of words by those skilled in a particular art.  *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Systems, LLC,* 350 F.3d 1327, 1338 (2003).

Extrinsic evidence by expert testimony can be useful to the courts, to provide background on the technology at issue, to explain how an invention works, or to establish that a particular term

4

in the patent or the prior art has a particular meaning in the pertinent field. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1308-09 (Fed. Cir. 1999). However, conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court and should be discounted if the testimony is clearly at odds with the claim construction mandated by the claim language, the written description and prosecution history. *Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 716 (Fed. Cir. 1998). Extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope because it poses the risk that it will be used to change the meaning of the claims contrary to the intrinsic public records consisting of the claim language, the specification and the prosecution history, which undermines the public notice function of patents. *Southwall Techs, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576 (Fed. Cir. 1995). An accused device has no place in the claim construction protocol. *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991). Finally, courts do not redraft claims. *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1996).

If the terms are written in means-plus-function format, the use of the word "means" creates a presumption that a claim is governed by 35 U.S.C. § 112, ¶ 6. *See Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,* 239 F.3d 1225, 1232 (Fed. Cir. 2001). A two-step analysis is used in construing any claim element governed by Section 112, ¶ 6. First, the court must identify the function "explicitly recited in the claim." *Asyst Techs, Inc. v. Empak, Inc.,* 268 F.3d 1364, 1369-70 (Fed. Cir. 2001). Second, the court must identify the corresponding structure set forth in the patent's written description and specification that performs the particular function set forth in the claim. *Id., J&M Corp. v. Harley-Davidson, Inc.,* 269 F.3d 1360, 1367 (Fed. Cir. 2001). Structural features that do not actually perform the recited function do not constitute corresponding structure, therefore, do not

5

serve as claim limitations. *Asyst Techs.,* 268 F.3d at 1370. There must be a clear link of the structure in the specification or prosecutorial history to the function in the claim to serve as a claim limitation. *Id.* If the term "means" is not used in the claim, the absence of the term creates a rebuttable presumption that section 112, ¶ 6 has not been evoked, but can be rebutted if the claim limitation itself does not recite sufficiently definite structure to perform the claimed function. *Kemco Sales, Inc. v. Control Papers Co., Inc.,* 208 F.3d 1352, 1361 (2000).

A *Markman* hearing was held in this matter. The parties have submitted briefs and outlines of the disputed terms and their proposed construction of the disputed terms.

### B.    Claims at Issue

#### 1.      '115 Patent

The claims at issue in the '115 patent are 1 and 10:

>    **1.**    Dispensing apparatus for dispensing a frozen product which comprises container means for containing the frozen product in semi-solid form to be dispensed, the container means having outlet means through which the product is discharged, dispensing means selectively operable to cause product in the container means to issue from the outlet means, said dispensing means comprising a piston operable upon being actuated to exert pressure on the frozen product and means isolating said piston from said frozen product so that said piston is not in engagement with said frozen product upon actuation of said piston, a housing for the container means, and refrigeration means whereby the housing and container means are kept at a low temperature to maintain the product in a frozen condition in operation.

>                                        *   *   *

>    **10.**    In an apparatus for dispensing a frozen product, said apparatus having a container for containing said frozen product, a shut-off valve for controlling the discharge of said product from said apparatus, an outlet duct communicating with said valve and sealingly receiving an end of said container, and a refrigerated housing surrounding said container, the improvement comprising:

6

dispensing means including drive means wherein said drive means is located within said refrigerated housing.

'115 patent, Ex. A, Plaintiff's Br.

## 2.       '820 Patent

Claims 1, 2, 6, 8-11, 15-17, 21, 23 and 24 are at issue in the '802 patent:

**1.**      An apparatus for dispensing a frozen product, said apparatus comprising a container for containing said frozen product, said container having an end with an outlet integral therewith, said outlet having an area less than the area of said end of said container, dispensing means for receiving said container and for dispensing said frozen product from said container through said outlet, a refrigerated housing surrounding said container, and an outlet duct in sealed communication with said outlet of said container, whereby during dispensing said frozen product travels through said outlet duct from a location within said refrigerated housing to a location outside said refrigerated housing.

**2.**      The apparatus of claim 1, wherein said outlet duct has a first end and a second end, said first end of said outlet being adjacent said end of said container.

*   *   *

**6.**      The apparatus of claim 1, further comprising a container holding means, said container holding means holding said container in a vertical orientation.

*   *   *

**8.**      The apparatus of claim 1, wherein said dispensing means comprises drive means, said drive means adapted to exert pressure on said frozen product so that said drive means is not in engagement with said frozen product upon actuation of said drive means.

**9.**      The apparatus of claim 8, wherein said drive means comprises a piston.

7

**10.**     The apparatus of claim 8, wherein said drive means comprises a plunger, said container having a top opposite said outlet, said plunger engaging said top of said container to exert pressure on said frozen product upon actuation of said drive means.

**11.**     The apparatus of claim 1, wherein said dispensing means further comprises means for controlling the discharge of said product from said apparatus.

\*   \*   \*

**15.**     The apparatus of claim 1 wherein said dispensing means comprises a plurality of dispensing assemblies and containers within a single refrigerated housing.

**16.**     The apparatus of claim 1, wherein said refrigerated housing has a front portion through which said outlet duct extends.

**17.**     The apparatus of claim 1, wherein said refrigerated housing is adapted to accommodate at least one spare container for refrigerated storage.

\*   \*   \*

**21.**     The apparatus of claim 1, wherein said outlet duct has a diameter, said diameter being sufficient to allow the passage of particulate matter container within said frozen product through said outlet duct.

\*   \*   \*

**23.**     The apparatus of claim 1 and further comprising means for automatically releasing dispensing pressure on said container after a preset time period.

**24.**     The apparatus of claim 1 wherein said outlet duct further comprises a plurality of outlet ducts.

'820 patent, Ex. B, Plaintiff's Br.

### 3.     '862 Patent

The claims at issue in '862 patent are 1-6 and 8-11:

8

**1.**     A method for dispensing a frozen confection, comprising:

a.     providing a container, said container having a side wall and an end, said end having a dispensing outlet integral therewith, said dispensing outlet having a cross sectional area less than the cross sectional area of said end, a portion of frozen confection contained in said container;

b.     providing a support means to support said container;

c.     providing a dispensing means operative to apply pressure to said container;

d.     disposing said container on said support means so that said container is supported thereby; and

e.     applying pressure to said container so as to dispense at least a part of said portion of frozen confection through said outlet.

**2.**     The method of claim 1, wherein said support means is operative to support said end of said container.

**3.**     The method of claim 1, wherein said support means includes a support member for supporting said container.

**4.**     The method of claim 3, wherein said support member has an opening defined therein and when said container is disposed on said support means, said outlet is aligned with said opening.

**5.**     The method of claim 1, wherein said container at least partially collapses when pressure is applied to said container.

**6.**     The method of claim 5, wherein said dispensing means comprises a piston for collapsing said container.

\*     \*     \*

**8.**     The method of claim 1, wherein said container further includes a removable cover for covering said outlet.

**9.**     The method of claim 8, further comprising removing said cover prior to disposing said container in said dispensing means.

**10.**     The method of claim 1, further comprising a

9

preliminary step of filling said container with frozen confection at a remote location.

**11.** The method of claim 10, further comprising transporting said filled container from aid remote location in a frozen state.

'862 patent, Ex. C, Plaintiff's Br.

### C.    **Disputed Terms**

### 1.    **"container"**

The term "container" is found in:  claim 10 of the '115 patent; claims 1, 2, 6, 10, 15, 17 and 21 of the '820 patent; and, claims 1, 2, 3, 4, 5, 6, 8, 9 and 10 of the '862 patent.  Plaintiff asserts that the term "container" is a well-known, common and ordinary English word and should be given its ordinary and customary meaning.  Plaintiff claims there is no need to add the limitations of the term set forth in the specifications.  Defendant seeks a more limited construction of the term, arguing that the prosecution history, like the specifications, confirm that the patentee chose to deviate from the plain and ordinary meaning of the term "container."

Plaintiff's proposed construction:

Something that holds, encloses or includes or that can hold, enclose or include something else.

Defendant's proposed construction:

A single-piece deformable receptacle in which a frozen product is held, the container being deformable at relatively low temperatures of between -10°C to -25°C, with the internal volume of the receptacle being substantially reduced as a result of a dispensing operation wherein pressure is applied directly to the outside of the receptacle.

(Def., Ex. A)

Plaintiff's construction is the ordinary definition of the term "container."  However, to one

10

skilled in the art of confection dispensing apparatus, Defendant's construction is applicable. Reviewing the claim language, both the asserted and non-asserted claims, and the specifications, the Court finds that the patentee defined the term "container" to be deformable or collapsable, to be able to be deformed or collapsed at a low temperature, since it is to be used at freezing temperatures so that the frozen confection can be dispensed in its frozen form. ('115 Patent, Abstract; C.2. lines 25-29; Figs. 1, 2, 4, 6 and 8)  The common specification found in the '115 patent establish that the patentee defined the term "container" narrower than the general common definition.  As noted in the Abstract, the patent includes a "collapsable" container.

### 2.   "container means"

"Container means" is found in claim 1 of the '115 patent.  Plaintiff asserts that the definition for "container means" is a combination of the ordinary and common dictionary meaning of the term "container" with the teaching of the specifications of the patents-in issue.  Plaintiff does not apply the means-plus-function analysis under section 112, ¶ 6.  Defendant claims that Section 112, ¶ 6 applies and that the means-plus-function analysis should control the definition.

Plaintiff's proposed definition is:

> A thing for containing a frozen product.

> Alternative definition:  A thing for containing a frozen product having a side wall and a pair of ends.

(Plaintiff's Resp. Br., Ex. F)

Defendant's proposed definition includes:

> [T]he claimed function as "containing the frozen product in semi-solid form to be dispensed."

:

> The structure disclosed for performing this function is a generally cylindrical deformable body in which is formed a series of

11

> corrugations extending circumferentially so that the corrugations can
> be deformed in the axial direction of the body, the container means
> having outlet means at one end, and the opposite end of the body
> being arranged for engagement with the dispensing means.

(Def., Ex. A)

Given that the term "container means" uses "means," the presumption is to apply Section 112, ¶ 6. Plaintiff has not established that the claim language and the specifications rebut this presumption. As noted by the Defendant, the claim language identifies the function of the "container means" in the claim language as "containing the frozen product in semi-solid form to be dispersed." ('115 Patent, C.7., lines 24-25) The structure disclosed in the specifications as a generally cylindrical body which is formed as a series of corrugations extending circumferentially so that the corrugations can be deformed in the axial direction of the body in the manner of a conertina or bellows. ('115 Patent, C.5., lines 9-13) However, the specifications states that although it is preferred that the container is cylindrical, other shapes are possible. ('115 Patent, C. 5, lines 57-58) The Defendant's definition of "container means" is applicable, although it need not be cylindrical.

### 3.    "dispensing means"

The term "dispensing means" is disclosed in: claims, 10 and 14 of the '115 patent; claims 1, 8, 11 and 15 of the '820 patent; and, claims 1, 6 and 9 of the '862 patent. Plaintiff defines the term "dispensing means" as a combination of the common and ordinary dictionary term for "dispensing" in combination with the teachings of the specification and the claims. Plaintiff argues that there are a number of structures identified in the claims and specifications that are capable of carrying out the act of dispensing and its proposed definition encompasses all the various structures. Defendant claims that Section 112, ¶ 6 applies and that the means-plus-function analysis should

govern in interpreting the term.

Plaintiff's proposed definition is:

A mechanism operable to force product out of a container.

Alternative definition: a piston operable upon being actuated to exert pressure on the frozen product and means isolating said piston from said frozen product so that said piston is not in engagement with said frozen product upon actuation of said piston.

Alternative definition: A frame operable to receive a container and a drive means and equivalents thereof.

(Plaintiff's Resp. Br., Ex. F)

Defendant's proposed definition is:

[T]he claimed functions of receiving the container and/or dispensing the product.

The structure disclosed for performing this function is a drive means coupled to a plunger, wherein the plunger engages the top of the container, applies pressure to the outside of the container and moves parallel to the axis of the container and deforms the container when operated; a cylinder drive, a piston, a piston rod, a valve and a duct, wherein during operation, the cylinder is filled with product then emptied of the product by the piston, pushed through the valve and the duct by the cylinder drive.

(Def., Ex. A)

Reviewing the claims and the specifications, the Court finds that the presumption that the means plus function analysis applies under Section 112, ¶ 6. The claim language identifies the function "to cause product in the container means to issue from the outlet means," ('115 Patent, C.7., lines 27-29) and "for receiving said container and for dispensing said frozen product from said container" ('820 Patent, C.7., lines 33-35). The claim language identifies dispensing means "comprising a piston operable upon being actuated to exert pressure on the frozen product and

13

means isolating said piston from said frozen product so that said piston is not in engagement with said frozen product upon actuation of said piston." ('115 Patent, C.7., lines 29-33)   The specifications describe dispensing means "for deforming and reducing the internal volume of the container means whereby to cause product in the container means to issue from the outlet means." (115 Patent, C.1., lines 51-54)   Defendant's definition is limiting in that the structure proposed describes the entire "dispensing apparatus" as opposed to the term "dispensing means."

The Court does not adopt either proposed definition but defines "dispensing means" as a mechanism for deforming and reducing the internal volume of the container means causing the product in the container means to issue from the outlet means operable by a piston being actuated to exert pressure on the frozen product where the piston is not engaged with the frozen product.

### 4.   "dispensing"

The term "dispensing" is asserted in:  claims 1 and 10 of the '115 patent; claims 1, 8, 11, 15 and 23 of the '820 patent; and, claims 1, 6 and 9 of the '862 patent.  Plaintiff asserts the ordinary and common English word found in the dictionary to define the term "dispensing."  Defendant argues that the term be defined as an operating device causing the product to issue from the container.

Plaintiff's proposed definition is:

> The act of dealing out, giving out or weighing out.

Defendant's proposed definition is:

> Operating the drive means to cause product to issue from the container outlet by compressing the container.

(Def., Ex. A)

The term "dispensing" is used throughout the claim language and the specifications to describe the more common usage of the term "dispensing."  A person one skilled in the art reviewing

14

the claim and specifications would not conclude that the term "dispensing" is a limited term confined to operating the drive means. Plaintiff's proposed definition applies.

### 5.      "side wall"

The term "side wall" is found in claim 1 of the '862 patent. Plaintiff proposes that the term "side wall" be defined based upon the ordinary dictionary definitions for "side" and "wall." Defendant argues that the specification unambiguously disclosed the claimed "side wall" as a vertical wall of the container, which deforms under the pressure exerted on the container by the dispensing means.

Plaintiff's proposed definition is:

A surface that is operable to enclose, divide, support or protect a thing or things.

Defendant's proposed definition is:

A deformable wall of the container.

(Def., Ex. A)

The term is found in claim 1 of the '862 patent. Reviewing the specification, it teaches that the side walls are deformable. Specifically, "[t]he invention also provides container means ... with *deformable* side walls." ('862 Patent, C.2., lines 29-30) "The container means may have side walls in the manner of a bellows." ('862 Patent, C.2., lines 34-35) Defendant's definition is to be applied in this case.

### 6.      "support means"

The term "support means" is found in the '862 patent in claims 1, 2, 3, and 4. Plaintiff claims that the term support should be given its ordinary definition set forth in the dictionary. Plaintiff argues that the specification describes a variety of structures, ranging from the flat surface

of the base plate to the use of upright plates, that may be used to support a container.  Although the

parties agree that the function of the term is to support the container, Defendant argues that the

parties differ as to the corresponding structure.  Defendant asserts that its interpretation includes all

the structure that the specification teaches as necessary to perform the function.

> Plaintiff's proposed definition is:
>
>> A structure that is operable to support a container.
>>
>> Alternative definition:  a base plate and equivalents thereof.

(Plaintiff's Resp. Br., Ex. F)

> Defendant's proposed interpretation is:
>
>> The function is "to support said container."
>>
>> The structure disclosed for supporting the container as a support
>> means is the frame plate which supports the support member and into
>> which the vertical shafts of the drive means are journaled.

(Def., Ex. A)

There is no dispute that the function of the support means is to support the container.  This

Court's review of the specifications does not reveal a structure for the function.  Defendant is unable

to show a clear link of the structure in the specifications since its proposed structure defines some

other structure relating to the support member, which is beyond the definition of the support means

at issue.  *See, Asyst Techs.,* 268 F.3d at 1370.  Plaintiff's proposed primary definition applies in this

case.

### 7.    "support member"

The term "support member" is found in claims 3 and 4 of the '862 patent.  Plaintiff asserts

that its proposed definition should be adopted because the term is described relative to the "support

16

means" term and, therefore it is obvious these two elements must be related.  Defendant asserts that Claims 3 and 4 depend ultimately on Claim 1 and the term "support member" is an express limitation of "support means."  Defendant argues that its proposed definition reflects a narrow disclosure of the term.

>    Plaintiff's proposed construction is:
>
>>    A structure that has a shape corresponding to the shape of an end of a container.
>>
>>    Alternative definition:   A part of a base plate having a shape corresponding to an end of a container and equivalents thereof.

(Plaintiff's Resp. Br., Ex. F)

>    Defendant's proposed construction is:
>
>>    A moveable plate mounted on the support means and movable in relation to the dispensing means to load and unload the container in the container housing.

(Def., Ex. A)

This Court's review of the claim language and the specifications does not show that the specifications limited the term as narrowly as Defendant's proposed definition.  The term is not defined in claim 2 of the '862 patent..  Claim 3 of the '862 patent asserts that the term "support member has an opening defined therein and when said container is disposed on said support means, said outlet is aligned with said opening." ('862 patent, claim 3)  Defendant's proposed construction is not supported by the specifications, since the term is not found in the specifications and in light of the statement that the "plates and can, however, be omitted." ('862 patent, C.3., lines 32-33)  The Court will not import limitations from the specification into the claim language which may be difficult to apply in practice.  *See Comark,* 156 F.3d at 1186-87.  Plaintiff's proposed primary

definition applies in this case.

###    8.    "drive means"

The term "drive means" is asserted in claim 10 of the '115 patent and claims 8, 9 and 10 of the '820 patent. Plaintiff asserts that the term "drive means" is associated with the "dispensing means" and may include a variety of mechanisms to power the dispensing means. Plaintiff's proposed definition addresses this wide range of possible power sources. Defendant argues that its proposed definition is the proper one because the it properly identified the structure related to the function.

Plaintiff's proposed construction is:

> A mechanism that when actuated powers the dispensing means.
>
> Alternative definition: a mechanism that when actuated powers the dispensing means.
>
> Alternative definition: a motor and a plunger, the motor causing a product to be dispensed by driving a plunger against a container and equivalents thereof.

(Plaintiff's Resp. Br., Ex. F)

Defendant's proposed construction is:

> The function is exerting pressure on the frozen product such that the drive means is not in contact with the frozen product in the '820 patent.
>
> No function is disclosed in claim 9 of the '820 patent or claim 10 of the '115 patent, and thus it is not possible to propose constructions to cover all uses of "drive means" in these claims.
>
> As an alternative, it appears that the structure disclosed for the claimed drive means of these claims may include a drive motor, a right angle or bevel gear, rotary drive shaft, a clutch, a drive belt, two drive pulleys on two vertical shafts, and a pressure bar, wherein the drive belt passes around the pulleys on the two vertical shafts, and

18

> each vertical shaft is threadingly engaging the pressure bar; controls
> for operating the drive means; a cylinder drive, a piston, a piston rod,
> a valve and a duct, wherein during operation, the cylinder is filled
> with product then emptied of the product by the piston, and pushed
> through the valve and the duct by the cylinder drive.

(Def., Ex. A)

The Court agrees with Defendant that the function of "drive means" cannot be determined in all the asserted claims. Plaintiff's proposed definition is, therefore, more applicable since it covers a variety of mechanisms to power the dispensing means. The term is not limited by the claims or the specifications. Plaintiff's proposed primary definition is applied in this case.

### 9. "plunger"

The term "plunger" is found in claim 10 of the '820 patent. Plaintiff seeks the common and ordinary meaning of the term. Defendant claims that the specification teaches only a single embodiment of the recited term and that the specification fails to teach or suggest any alternative embodiment that would support Plaintiff's broad construction.

Plaintiff's proposed construction is:

> A part that acts with a plunging motion.

Defendant's proposed construction is:

> An element of the drive means and dispensing means attached to the
> pressure bar which engages the top of the container, remains outside
> the container, is enclosed by the refrigerated part of the housing, and
> does not extend out of the refrigerated housing.

(Def., Ex. A)

Claim '10 of the '820 patent notes that the drive means comprises a plunger and that said plunger engages the to of the container to exert pressure on the frozen product. ('820 patent, claim 10) The specifications teaches that the plunger is driven against the container means and the plunger

19

moves parallel to the axis of the container.  ('820 patent, C.2., lines 9-10)  The plunger engages the

top of a container and is shaped to engage a recess of the shape.  ('820 patent, C.3., lines 23-25),

Figure 2 shows the plunger at the top of the container.  ('820 patent, Fig. 2, #31)  The Court finds

that one skilled in the art, based on the language in the specifications, would conclude that the

plunger is simply a part that acts with a plunging motion.  Nothing else in the specifications reveal

a more limited construction as Defendant asserts.  The Court applies Plaintiff's definition in this

case.

### 10.    "plurality of dispensing assemblies"

The '820 patent, claim 15, contains the term "plurality of dispensing assemblies."  Plaintiff

claims that the term is not discussed in the specifications, therefore, the term means what it says.

Plaintiff states that the invention may be configured to dispense product from multiple cutlets.

Defendant asserts that the term does not require a detailed discussion and seeks adoption of its

definition.

Plaintiff's proposed construction is:

A plurality of dispensing means.

Alternative definition:   At least two dispensing means, each
dispensing means having an associated container and valve and
equivalents thereof.

(Plaintiff's Resp. Br., Ex. F)

Defendant's proposed construction is:

Within a single refrigerated housing, two or more setups that each
include a dispensing means and a deformable container.

(Def., Ex. A)

Both parties agree that the term is not defined in the specifications.  The Court adopts

20

Plaintiff's primary proposed construction because Defendant's proposed construction reads more into the definition than what the term requires. A person skilled in the art would not require such a limited reading of the term.

### 11. "means for automatically releasing dispensing pressure"

The term "means for automatically releasing dispensing pressure" is found in claim 23 of the '820 patent. Plaintiff asserts that this term is associated with the drive means, which is itself associated with the dispensing means. Plaintiff claims that the definition of the term is nothing more than the sum of this logical assumption and the words of the term itself. Plaintiff does not analyze this term under the means plus function format. Defendant analyzes this term under the means plus function format and argues that its proposed construction of this claim properly identifies the recited function and corresponding structure disclosed for performing that function, namely, a clutch element within the drive means, wherein de-energization of the clutch releases pressure on the container.

> Plaintiff's proposed construction is:
>
> > A mechanism associated with the drive means that is operable to cause the dispensing means to automatically release dispensing pressure.
>
> Defendant's proposed construction is:
>
> > The function is "automatically releasing dispensing pressure" on the container after a preset amount of time.
> >
> > The structure disclosed for this function is a clutch element within the drive means, wherein de-energization of the clutch releases pressure on the container.

(Def., Ex. A)

Claim 23 of the '862 patent sets forth the term as to the apparatus of claim 1 and further

comprising "means for automatically releasing dispensing pressure" on said container. ('862 patent, claim 23). The function is set forth in the claim as "automatically releasing dispensing pressure," as noted by Defendant. However, this Court's review of the specifications does not show a clear link to a structure. Defendant's proposed structure is not clearly linked to the function. Accordingly, Plaintiff's proposed construction applies in this case.

## 12. "container holding means"

The term "container holding means" is found in claim 6 of the '820 patent. Plaintiff claims that the term is not described in the specifications, but asserts that this term describes the same thing in the '862 patent, recited as the support means term in that patent. Defendant argues that Plaintiff's definition is incorrect and that this term describes different functions and a different corresponding structure.

Plaintiff's proposed definition is:

A structure that is operable to support a container.

Alternative definition: A base plate and equivalents thereof.

(Plaintiff's Resp. Br., Ex. F)

Defendant's proposed definition is:

The claimed function is two walls that keep a container stationary.

The structure is a two part-cylindrical plates which are spaced apart along each side to define vertical slots to admit the container and the pressure bar as the plunger is moved up and down.

(Def., Ex. A)

The Court finds that the function recited in claim 6 of the '820 patent is holding said container in a vertical orientation. However, the specifications does not clearly link a structure to

22

that function. Defendant's proposed structure cannot be linked to the function because it defines the container itself. Plaintiff's proposed primary definition applies in this case.

### 13.   "outlet means"

The term "outlet means" is found in claim 1 of the '115 patent. Neither party set forth any arguments regarding their proposed definitions for this term in their briefs.

Plaintiff's proposed definition is:

> An outlet on the container.

> Alternative definition:   An outlet at one end of a container and equivalents thereof.

(Plaintiff's Resp. Br., Ex. F)

Defendant's proposed definition is:

> The function is an opening allowing for the discharge of the frozen product from the container means.

> The structure is a tapered opening in the bottom of the container from where frozen product issues, wherein the tapered opening is formed with a screw-threaded portion for fitting a cap.

(Def. Ex. A)

This Court agrees with Defendant's proposed definition of this term. The function disclosed for the term is for the discharge of the frozen product from the container means. The structure cited by Defendant is clearly linked to the function of the term, that the opening is tapered where the frozen product issues. (See, '115 patent, C.1., lines 50-54; C.3., lines 35-43; C.5., lines 16-20, 25-26) Defendant's definition is applied in this case.

### 14.   "means isolating said piston from said frozen product"

The "means isolating said piston from said frozen product" is disclosed in claim 1 of the '115

23

patent.  Although Plaintiff did not initially propose a definition for this term, in response to Defendant's initial brief, Plaintiff submitted a proposed definition.  Plaintiff asserts that the recited function at issue is isolating the piston from said frozen product and the corresponding structure to that function, when viewed in the context of the claim, is a plunger.  Plaintiff argues that the structure cannot be part of the "container means" of claim 1, since the "container means" is discussed separately.  Defendant does not set forth any argument regarding its proposed definition of this term in its initial or response brief.

Plaintiff's proposed definition is:

A device associated with the piston that prevents the piston from contacting the frozen product.

Alternative definition:  A plunger or the equivalent thereof.

(Plaintiff's Resp. Br., Ex. E)

Defendant's proposed definition is:

The function is isolating the piston so that it is not in engagement with the frozen product upon actuation.

There is no structure or insufficient structure disclosed for the means isolating said piston from said frozen product, and thus, a proposed construction cannot be offered.

(Def., Ex. A)

The parties' asserted defined function is essentially the same, except Defendant's asserted function is more accurate–the function that the piston is not in engagement with said frozen product upon actuation of said piston.  Although Plaintiff argues that the term is essentially a plunger as asserted in the '862 patent noted above, the term plunger as disclosed in the specifications of the '115 patent does not clearly link the plunger to the function defined.  Defendant declines to offer a

24

proposed construction.  The Court, therefore finds that Plaintiff's proposed primary definition applies since  the definition is not limited by the specifications, including the structure of a plunger.

### 15.    "refrigeration means"

The term "refrigeration means" is found in claim 1 of the '115 patent.  Plaintiff did not submit a proposed definition for this term in its initial brief.  Although a proposed definition was submitted in its response brief to Defendant's initial brief, Plaintiff did not set forth any argument as to its proposed definition.  Defendant also does not set forth any argument regarding its proposed definition for the term.

Plaintiff's proposed definition is:

A mechanism that is operable to refrigerate the housing and container.

Alternative definition:  Refrigeration apparatus known in the art operable to maintain the housing and container at a low temperature and equivalents thereof.

(Plaintiff's Resp. Br., Ex. F)

Defendant's proposed definition is:

The claimed function is maintaining the housing and container at a low temperature such that the product is in a frozen condition in operation.

The structure is a separate compartment on the rear of the apparatus containing a compressor and requiring a power supply which maintains the temperature between -10EC and -25EC to allow for the necessary deformability of the container.

(Def., Ex. A)

The Court finds that the asserted function as identified by Defendant is correct--the function of the term "refrigeration means" is maintaining the housing and container means are kept at a low

25

temperature such the product is in a frozen condition in operation.  ('115 patent, claim 1, C.7., lines

34-36)  The Court further finds that the structure identified by Defendant is a separate compartment

on the rear of the apparatus, as shown in figures 3 and 8.  ('115 patent, C.2., lines 60-62; C.5., lines

50-52)  Defendant's proposed construction is applied in this case.

> **16.**    **"means for controlling the discharge of said product from said apparatus"**

The term "means for controlling the discharge of said product from said apparatus" is

disclosed in claim 11 of the '820 patent.  Plaintiff did not submit a proposed definition for this term

in its initial brief.  Although a proposed definition was submitted in its response brief to Defendant's

initial brief, Plaintiff did not set forth any argument as to its proposed definition.  Defendant also

does not set forth any argument regarding its proposed definition for the term.

Plaintiff's proposed definition is:

> A device operable to activate the dispensing means.

> Alternative definition:  a valve, the operation of which operates the dispensing means and equivalents thereof.

(Plaintiff's Resp. Br., Ex. F)

Defendant's proposed definition is:

> The claimed function is controlling the discharge of the product.

> There is no structure or insufficient structure disclosed within the dispensing means for means for controlling the discharge of said product from said apparatus, and thus a proposed construction cannot be offered.

> Alternative definition: the means for controlling the discharge of said product from said apparatus is a shut-off valve.

(Def., Ex. A)

The Court's review of claim 11 of the '820 patent supports Defendant's claimed function of the term–controlling the discharge of said product from said apparatus. The Court agrees with Defendant that there is no structure disclosed in the specifications clearly linking the structure to the claimed function. The primary definition proposed by Plaintiff is applicable since there is no structure limiting the function of the term.

## III.   SUMMARY OF DEFINITIONS OF DISPUTED TERMS

For the reasons stated above, the following terms are hereby defined:

1.   **"container"**

A single-piece deformable receptacle in which a frozen product is held, the container being deformable at relatively low temperatures of between -10°C to -25°C, with the internal volume of the receptacle being substantially reduced as a result of a dispensing operation wherein pressure is applied directly to the outside of the receptacle.

2.   **"container means"**

The structure disclosed for performing this function is a generally deformable body in which is formed a series of corrugations extending circumferentially so that the corrugations can be deformed in the axial direction of the body, the container means having outlet means at one end, and the opposite end of the body being arranged for engagement with the dispensing means.

3.   **"dispensing means"**

A mechanism for deforming and reducing the internal volume of the container means causing the product in the container means to issue from the outlet means operable by a piston being actuated to exert pressure on the frozen product where the piston is not engaged with the frozen product.

27

4.      **"dispensing"**

The act of dealing out, giving out or weighing out.

5.      **"side wall"**

A deformable wall of the container

6.      **"support means"**

A structure that is operable to support a container.

7.      **"support member"**

A structure that has a shape corresponding to the shape of an end of a container.

8.      **"drive means"**

A mechanism that when actuated powers the dispensing means.

9.      **"plunger"**

A part that acts with a plunging motion.

10.     **"plurality of dispensing assemblies"**

A plurality of dispensing means.

11.     **"means for automatically releasing dispensing pressure"**

A mechanism associated with the drive means that is operable to cause the dispensing means to automatically release dispensing pressure.

12.     **"container holding means"**

A structure that is operable to support a container.

13.     **"outlet means"**

The function is an opening allowing for the discharge of the frozen product from the container means.

The structure is a tapered opening in the bottom of the container from where frozen product issues, wherein the tapered opening is formed with a screw-threaded portion for fitting a cap.

**14.**   **"means isolating said piston from said frozen product"**

A device associated with the piston that prevents the piston from contacting the frozen product.

**15.**   **"refrigeration means"**

The claimed function is maintaining the housing and container at a low temperature such that the product is in a frozen condition in operation.

The structure is a separate compartment on the rear of the apparatus containing a compressor and requiring a power supply which maintains the temperature between -10EC and -25EC to allow for the necessary deformability of the container.

**16.**   **"means for controlling the discharge of said product from said apparatus"**

A device operable to activate the dispensing means.

## IV.   CONCLUSION

Based on the briefs, proposed construction and oral arguments in this matter,

IT IS ORDERED that the disputed terms are defined as more fully set forth above.

IT IS FURTHER ORDERED that a status and scheduling conference is set in this matter for

**May 14, 2012 at 2:30 p.m.**

S/Denise Page Hood
United States District Judge

Dated:  March 30, 2012

29

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2012, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager